19354

James McLAMORE, for himself and in behalf of all persons serving sentences of six months or more on county prison camps in Richland County, Appellants, v. The STATE of South Carolina et al., Respondents.

(186 S. E. (2d) 250)

BRAILSFORD, J., did not participate.

414

*Messrs. John W. Williams, Jr.,* and *Daniel T. Brailsford,* of Columbia, *for* *Appellant,* cite:

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Emmet H. Clair, Alexander S. Macaulay, Asst. Attys. Gen.,* of Columbia, *for Respondents,* cite:

January 13, 1972.

LITTLEJOHN, Justice:

On December 20, 1968, the appellant pled guilty to assault and battery of a high and aggravated nature, and to four counts of armed robbery in the Richland County Court of General Sessions. His sentence provided that "James Mc-Lamore be held to labor upon the public works of Richland County for a period of nine years or be confined to, hard labor at the State Penitentiary for a like period." There was no appeal from such judgment of the court. He was assigned to the public works camp of Richland County.

In September, 1969, the appellant commenced this action pursuant to the Uniform Post-Conviction Procedure Act adopted by the General Assembly May 1, 1969. It is alleged to be a class action pursuant to Section 10-205 of the Code of Laws of South Carolina (1962), and purports to litigate in behalf of appellant and all persons currently serving sentences of six months or more on the public works of or in county prison camps of Richland County. Respondent Leeke is Director of the South Carolina Department of Corrections

(penitentiary); respondent Talbert is the Richland County Road Supervisor having custody of the appellant as a prisoner.

The appellant does not seek release from confinement. He seeks an order of the Court declaring (1) the Richland County prison camps unconstitutional; (2) that Sections 17-554 and 55-327 of the Code prescribing sentencing procedures through which some convicts are assigned to county camps, are unconstitutional; (3) that all prisoners serving six months or more be transferred to the Department of Corrections, or in the alternative, that inmates of the Richland County prison camp be provided substantially identical treatment as inmates of the Department of Corrections; (4) that the Department of Corrections take over and begin operating the Richland County prison camps.

The gravamen of the complaint is to allege that inmates of the Department of Corrections have advantages such as psychological counseling, work release programs, nutritional diet, medical care and educational training which inmates of the Richland County prison camps do not have. It is alleged further that because of the differences in treatment the appellant is being restrained in violation of the Constitution of the United States and of the Constitution of South Carolina.

The answers of the respondents are in essence general denials, and assert that the rights of the appellant are not being violated. The answers ask that the action be dismissed.

No testimony was taken in the court below because of stipulations agreed to by all parties. Various exhibits were introduced and the parties given full opportunity to present their respective positions. The controlling stipulations relevant to the issues on this appeal were in essence as follows:

Able-bodied male convicts who are sentenced to six months or more are sentenced in the alternative to the public works of the county or to the Department of Corrections. The County Supervisor, in his sole discretion, selects the

prisoners who will be assigned to the county prison camps. He does this by reason of applicable legislative statutes, and there is no contention of abuse of discretion. The county prison camps of Richland County, in their operational facilities, personnel and standards, are at least equal to county penal facilities in the other counties of South Carolina.

Prisoners assigned to the camps perform labor as cooks, maintenance personnel, equipment operators, and truck drivers. Others perform maintenance and construction work on public roads, generally similar to work performed by employees of highway contractors. They work an 8 hour day, 5 days a week, without pay. The camps are operated well.

The Richland County prison camp does not have facilities for organized, professionally supervised academic, recreational, social and vocational programs available at large correctional institutions.

The Department of Corrections consists of 12 different institutions of various degrees of security and offering varying types of work and/or training. Not all programs are available at every institution. Inmates at the Department of Corrections are normally required to perform manual labor 40 hours per week, except time spent in training is credited against work requirements. Workers receive some compensation for their work.

The issues for determination in the court below, and preserved for review on this appeal, may be stated as follows:

1. Does confinement at hard labor on the public works of Richland County constitute cruel and unusual punishment?

2. Is the statutory procedure under Section 17-554 of the Code an unconstitutional delegation of judicial authority?

3. Is the procedure whereby convicts are selected to serve in the various prison facilities of the State unconstitutional?

4. Is appellant denied constitutional rights under the equal protection clauses of the constitutions because educational and rehabilitative services available to inmates of the Department of Corrections are not available to him?

We refer to the Constitutional provisions and statutes relied upon:

The eighth amendment to the U. S. Const. and S. C. Const., art. 1, § 19, forbid "cruel and unusual punishments."

The fourteenth amendment to the U. S. Const. and S. C. Const., art. 1, § 5, forbid that persons be deprived of liberty "without due process of law" and forbid that any person be denied "equal protection of the law."

The S. C. Const., art. 5, § 33, provides as follows:

"Sentence to labor on highways. Circuit Courts and all Courts inferior thereto and municipal Courts shall have the power, in their discretion, to impose sentence of labor upon highways, streets and other public works upon persons by them sentenced to imprisonment."

The S. C. Const., art. 12, § 6, provides as follows:

"Convicts sentenced to hard labor. All convicts sentenced to hard labor by any of the Courts in this State may be employed upon the public works of the State or of the counties and upon the public highways."

Relevant portions of Section 17-554 of the Code of South Carolina read this way:

"Able-bodied male convicts to work on county or municipal chain gangs.—In every case in which imprisonment is provided as the punishment, in whole or in part, for any crime, all able-bodied male convicts shall be sentenced to hard labor on the public works of the county in which convicted, if such county maintains a chain gang, without regard to the length of service, and in the alternative to imprisonment in the county jail or State Penitentiary at hard labor. . . . In any case the presiding judge shall have the power, by special order, to direct that any person convicted before him be confined in the State Penitentiary if it is considered unsafe or unwise for such convict to be committed to the county chain gang."

Section 55-327, referred to in the proceedings below, was repealed prior to the imposition of the appellant's sentence and is not relevant.

We are of the opinion that the trial judge correctly disposed of all issues. We draw heavily upon his order in discussing the questions involved.

We think that the trial judge correctly concluded that the appellant failed to carry the burden of proof that his constitutional rights had been violated because of his suffering cruel and unusual punishment. There is nothing in the record to indicate that the appellant, or any persons for whom he purports to litigate, performed any hard labor different from that performed by a multitude of civilians engaged in certain types of employment. In *State v. Huffstetler*, 213 S. C. 319, 49 S. E. (2d) 585 (1948), this Court said:

"Hard labor is not of itself a cruel or unusual punishment. *Durham v. State*, 89 Tenn. 723, 18 S. W. 74; *Pervear v. Massachusetts*, 5 Wall. 475, 476, 18 L. Ed. 608; *O'Neil v. Com.*, 165 Mass. 446, 43 N. E. 183. 2 Bouv. Law Dict., Rawle's Third Rev. (1914) p. 1425.

"It has been held that where all prisoners confined in the penitentiary are compelled to perform labor proportionate to their capacity, a statute prescribing imprisonment at hard labor prescribes no different punishment than one which imposes punishment in the penitentiary without mention of labor. *In re Danton*, 108 Kan. 451, 195 P. 981, 24 C. J. S. Criminal Law, § 1992, p. 1217."

This is in accord with good authority:

"[S]tatutes may require a person convicted of crime be subjected to certain conditions or restraints in his confinement. Thus, punishment by imprisonment at hard labor is not of itself cruel and unusual within the meaning of the constitutional ban on such punishments. And it is not cruel and unusual punishment to compel a prisoner to work on the public highways or streets." 21 Am. Jur. (2d), Criminal

Law, § 615 at page 565. See also 24B C. J. S. Criminal Law § 2000b (1) at page 694.

We cannot agree with argument of appellant that Section 17-554 of the Code is an unconstitutional delegation of judicial authority contrary to art. 5, § 33 of the constitution of this state. Under this section the sentencing judge determines the amount of time to be served. He must then sentence the defendant "to hard labor on the public works of the county in which convicted, if such county maintains a chain gang, without regard to the length of service, and in the alternative to imprisonment in the county jail or State Penitentiary at hard labor." Young defendants may be sentenced under the Youthful Offender Act, § 55-391, *et seq.*, and dangerous defendants may be, by special order, directed to the Department of Corrections, but these special alternatives are not applicable here.

In *State v. Durham,* 89 S. C. 134, 71 S. E. 847 (1911), this court held, under a similar statute, that a sentence in the *alternative* was required.

There can be no doubt but that the appellant here was not entitled to be sentenced under the Youthful Offender Act, and was not sentenced under the dangerous defendant provisions of Section 17-554. He was properly sentenced in the alternative under the first provisions set forth in Section 17-554 as quoted above.

The gravaman of appellant's argument is that art. 5, § 33 of the constitution of this State requires the judge to exercise a discretion and determine where the defendant should serve and sentence imposed. He argues that the judge may not delegate the authority to some administrative officer such as the County Supervisor (and presumably the Director of the Department of Corrections) to determine in which institution the sentence will be served. We think that the judge does not delegate the authority. Rather, the judge performs the duty imposed upon him by the constitution, and the legislature confers upon the County Supervisor

and/or the Director the right and the duty to determine where the sentence will be served. We do not construe the constitutional provision as imposing upon the trial judge the duty of making a determination beyond that imposed upon him by the statute. The discretion referred to in art. 5, § 33 is to require labor on the highways or not require it.

Having concluded that the constitution does not require the judge to single out the place of confinement, it follows that some authority must make the determination. That authority has been designated by the legislature. Unfortunately, for him, that authority did not make the selection preferred by the appellant. Many prisoners in the Department of Corrections would prefer to be on the county public works. Many prisoners on the county public works would prefer to be in the Department of Corrections. Discretion as to where a sentence will be served is permitted not only at the time the sentence is to commence, but throughout the time the sentence is being served. See Sections 55-451 and 55-475 of the Code.

The appellant argues that he has been deprived of the educational and rehabilitation training and influences unavailable to him but available to inmates of the Department of Corrections, contrary to the equal protection of the fourteenth amendment of the Constitution of the United States, and contrary to art. 1, § 5 of the Constitution of South Carolina.

Section 17-554 permits and contemplates that the court sentence defendants to hard labor unless the judge, exercising his discretion, designates "such labor as the prisoner is able to perform" or indicates otherwise. The benefits and detriments of prison life can never be exactly equal, and perhaps not even approximately equal. A defendant who is sentenced to confinement at hard labor has little reason to complain that he is confined at work. The fact that not every prisoner is assigned chores as difficult as other prisoners gives no rise to a cause of action.

A penal system is not a single entity, but is made up of many parts requiring labor of many different types and skills. It is perhaps unfortunate that not every prisoner in South Carolina is able to avail himself of an educational and/or rehabilitation program. Certain constitutional rights follow a person into confinement, but there is no constitutional duty imposed on any government entity to educate or rehabilitate him. Efforts to rehabilitate and educate are to be commended; to require that every prisoner be treated exactly alike might discourage rather than encourage the programs.

In the case of *Wilson v. Kelley,* 294 F. Supp. 1005 (1968), a three judge district court had before it the case of a prisoner who sought to abolish all county public work camps within the State of Georgia. The court said:

". . . The theory is advanced that certain state institutions offer academic and trade programs, while the public works camps offer only physical labor. Under such circumstances, it is contended that hard labor constitutes cruel and unusual punishment under the Eighth Amendment and involuntary servitude under the Thirteenth Amendment.

"Moreover, there is a longstanding policy of the courts not to interfere in prison administration and discipline at any level. *Price v. Johnston,* 334 U. S. 266, 68 S. Ct. 1049, 92 L. Ed. 1356 (1947); *Tabor v. Hardwick,* 224 F. (2d) 526 (5th Cir. 1955). And, there must be a clear abuse of discretion before the courts will do so. *Walker v. Blackwell,* 360 F. (2d) 66 (5th Cir. 1966). The location and type of institution to be established and the programs for each are basically matters for determination by the appropriate administrators. Of course, certain constitutional rights follow a person into state prison through the Fourteenth Amendment and among these is the protection of the Eighth Amendment against cruel and unusual punishment. However, a work camp *per se* does not constitute such 'inhuman, barbarious or tortuous punishment' as to violate the Eighth Amendment."

The court went on to say:

"To order the maximum for each and every person confined, as sought by plaintiffs here, would be financially prohibitive for this state and could result in a reduction of rehabilitative efforts rather than an implementation."

This decision was affirmed by a *per curiam* decision of the United States Supreme Court, 393 U. S. 266, 89 S. Ct. 477, 21 L. Ed. (2d) 425 (1968).

The effect of the position of the appellant is to say that if the State undertakes to provide what we might refer to generally as rehabilitative facilities, it must provide such facilities to all prisoners or to none. In similar fashion, it might be argued that every citizen who lives on a dirt road is entitled to, have a paved road because other citizens have paved roads. It might be argued that if the government undertakes to provide housing for the poor, all poor people are entitled to a house. We do not think such to, be the requirement of the due process and equal protection clauses of either the State or the United States Constitutions.

We agree with the trial judge when in his order he said:

"The Petitioner has been constitutionally convicted and sentenced for a crime against society. A humane and civilized society has the right to punish him as long as it does not violate the prohibition against cruel and unusual punishment. His standing to now complain about the consequences of his actions is at least questionable.

"In view of the foregoing, this Court finds that the Petitioner has been denied no constitutional right. His detention and confinement in the Richland County Work Camp is in accordance with the Constitution and laws of this State."

The judgment of the lower court is,

Affirmed.

Moss, C. J., and Lewis and Bussey, JJ., concur.

Brailsford, J., not participating.