531 S.E.2d 507

**Darryl Vincent JERNIGAN, Petitioner,**

v.

**STATE of South Carolina, Respondent.**

No. 25087.

Supreme Court of South Carolina.

Submitted Dec. 15, 1999.

Filed March 13, 2000.

Refiled May 1, 2000.

Assistant Appellate Defender Robert M. Pachak, of the South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Teresa A. Knox, all of Columbia, for respondent.

## ORDER

This matter is before us on Petitions to Stay Remittitur and for Rehearing to review our decision in *Jernigan v. State,* Op. No. 25087 (filed March 13, 2000) (Shearouse Adv. Sh. No. 10 at 21). The opinion heretofore filed is withdrawn and the attached opinion is substituted in its place. The Petitions to Stay Remittitur and for Rehearing are denied.

/s/ Jean H. Toal, Acting C.J.

/s/ James E. Moore, J.

/s/ John H. Waller, Jr., J.

/s/ E.C. Burnett, III, J.

FINNEY, C.J., not participating.

WALLER, Justice:

The Court granted a writ of certiorari to review the summary dismissal of Darryl Jernigan's (petitioner) post-conviction relief (PCR) action. We vacate and remand for further proceedings.

## FACTS

On February 17, 1983, petitioner pled guilty to armed robbery which was committed on May 27, 1982. Petitioner filed an application for PCR on September 9, 1996. Subsequent to filing the PCR action, he amended his PCR application to add an ex post facto claim due to a change from annual review for parole to biannual review.

The PCR court summarily dismissed the PCR action based upon the statute of limitations, S.C.Code Ann. § 17–27–45(A) (Supp.1998), and *Peloquin v. State,* 321 S.C. 468, 469 S.E.2d 606 (1996) (holding that all defendants convicted prior to the

effective date of the statute, July 1, 1995, must be allowed until July 1, 1996, to file an application). Petitioner filed a motion to alter or amend the judgment of the PCR court. At the hearing on the motion, petitioner testified that he filed his amendment to the PCR application within one year of discovering that his parole review had changed to biannual review. The PCR court denied the motion to alter or amend the judgment.

We granted the petition for a writ of certiorari to determine whether a change from annual parole review to biannual review for violent offenders violates the Ex Post Facto Clause.

## ISSUES

I. Did the PCR court err in summarily dismissing petitioner's claim?

II. Does the change from annual parole review to biannual review violate the Ex Post Facto Clause?

## DISCUSSION

### I. Summary Dismissal

█ Because petitioner filed his ex post facto claim within one year of discovering that his parole review had changed to biannual review, he argues that the PCR court erred in summarily dismissing his PCR action.

Due to our recent decision in *Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000), whether summary dismissal was proper is no longer an issue. Pursuant to *Al–Shabazz*, an ex post facto claim is not appropriate for PCR. The *Al–Shabazz* Court held that "PCR is a proper avenue of relief *only when the applicant mounts a collateral attack challenging the validity of his conviction or sentence* as authorized by Section 17–27–20(a)." *Id.* at 367, 527 S.E.2d at 749 (emphasis in original).[1] Since petitioner's ex post facto claim is not a collateral attack on the validity of his conviction or sentence, it is not cognizable under the PCR statute.

---

1. The Court noted that the two non-collateral matters specifically enumerated in section 17–27–20(a)(5) were exceptions to this general rule. *See* S.C.Code Ann. § 17–27–20(a)(5) (Supp.1998) (PCR claims are allowed where applicant alleges that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked).

Instead, an ex post facto claim is considered a non-collateral matter. We held in *Al–Shabazz* that if an inmate raises a non-collateral matter with the Department of Corrections (DOC), then the state Administrative Procedures Act (APA) applies and an inmate may seek review of the DOC's final decision under the APA. *Id.* at 369, 527 S.E.2d at 750. The *Al–Shabazz* decision applies to all pending PCR actions in which the DOC has decided a non-collateral matter and the inmate has not had the opportunity to obtain APA review. *Id.* at 384, 527 S.E.2d at 758.

Accordingly, as a non-collateral matter, petitioner's ex post facto claim should be remanded to the appropriate agency to allow it to make a final decision on petitioner's claim. However, it is unclear from the record whether the DOC made the decision to retroactively apply the law changing parole review to every two years, or whether the Department of Probation, Pardon and Parole Services (DPPPS) is the agency responsible for this decision. We therefore remand this matter to the circuit court to determine whether the case should be remanded to the DOC or the DPPPS.

## II. Ex Post Facto Claim

■ Petitioner argues that the change in his parole review from annual to biannual review constitutes an ex post facto violation.[2] We agree.

■ Petitioner committed armed robbery in 1982.[3] At that time, parole review commenced after an inmate served one-fourth of his sentence, and if parole was denied, the inmate's case would then be reviewed "every twelve months thereafter." S.C.Code Ann. § 24–21–620 (Supp.1981). In 1986, the

---

Neither of these exceptions, however, applies to petitioner's ex post facto claim.

**2.** The Constitutions of the United States and of South Carolina specifically prohibit the passage of ex post facto laws. U.S. Const. art. I, § 10; S.C. Const. art. I, § 4.

**3.** The law existing at the time of the offense determines whether an increase of punishment constitutes an ex post facto violation. *Elmore v. State,* 305 S.C. 456, 459, 409 S.E.2d 397, 399 (1991) (citing *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987)).

Legislature enacted the Omnibus Crime Act. One section of the legislation defined violent crimes, and armed robbery is specifically enumerated as a violent crime. *See* S.C.Code Ann. § 16–1–60 (Supp.1998). After an initial denial of parole, those convicted of violent crimes will be reconsidered for parole "every two years." S.C.Code Ann. § 24–21–645 (Supp.1998).

An ex post facto violation occurs when a change in the law retroactively alters the definition of a crime or increases the punishment for a crime. *E.g., Lynce v. Mathis,* 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997); *California Dep't of Corrections v. Morales,* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995); *Farris v. State,* 334 S.C. 21, 511 S.E.2d 688 (1999). Regarding the issue of increase of punishment, the relevant inquiry is whether the legislative amendment "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Morales,* 514 U.S. at 509, 115 S.Ct. at 1603, 131 L.Ed.2d at 597. If the amendment produces only a "speculative and attenuated possibility" of increasing an inmate's punishment, then there is no ex post facto violation. *Id.* A court should look at the effect of the statute on the "quantum of punishment" to determine whether an amendment offends the Ex Post Facto Clause. *Lynce,* 519 U.S. at 444–45, 117 S.Ct. at 897, 137 L.Ed.2d at 73.

The retroactive application of section 24–21–645, which results in a change from annual to biannual parole reconsideration for violent offenders, has been challenged several times, and both this Court and the federal courts have addressed the claim in published opinions. In *Gunter v. State,* 298 S.C. 113, 378 S.E.2d 443 (1989), the petitioner argued that the change to biannual parole review violated the Ex Post Facto Clauses of the United States and South Carolina Constitutions. This Court stated that "the standards governing petitioner's parole eligibility have not been changed. Instead, only the frequency with which petitioner can be reconsidered for parole has been altered." *Id.* at 115–16, 378 S.E.2d at 444. Thus, the Court held that there was no ex post facto violation.

However, in *Griffin v. State,* 315 S.C. 285, 433 S.E.2d 862 (1993), *cert. denied,* 510 U.S. 1093, 114 S.Ct. 924, 127 L.Ed.2d 217 (1994), we overruled this holding of *Gunter.* The *Griffin* court adopted the decision of the Fourth Circuit Court of Appeals in *Roller v. Cavanaugh,* 984 F.2d 120 (4th Cir.1993)

(*Roller I* ). In *Roller I*, the Fourth Circuit stated that it was "not willing to disparage the 'substance' of a year, especially a year in prison," and found that the change to biannual review was not merely procedural. *Id.* at 123. The *Roller I* court held that the change from annual parole review to biannual review offended ex post facto principles. Finding the Fourth Circuit's analysis compelling, this Court in *Griffin* adopted the holding of *Roller I*.

In 1995, the United States Supreme Court decided *California Dep't of Corrections v. Morales*. The *Morales* Court evaluated an amended California statute directed at inmates who had been convicted of "more than one offense which involves the taking of a life." Under the law in effect at the time of Morales' second murder, he was eligible for parole hearings on an annual basis. The amended statute, directed specifically at those who had killed more than once, gave the parole board the discretion to defer parole review for up to three years if the board found that is was not reasonable to expect that the inmate would be granted parole during the interval. The statute directed the board to state the bases for its finding that parole review should be deferred. *Morales*, 514 U.S. at 503, 115 S.Ct. at 1600, 131 L.Ed.2d at 593.

The *Morales* Court stated that the amendment created "only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold" which might be established under the Ex Post Facto Clause. *Id.* at 509, 115 S.Ct. at 1603, 131 L.Ed.2d at 597. In deciding that there was an insufficient risk of increasing punishment under the amended statute, the Court focused on several aspects of the statute. First, the law applied "only to a class of prisoners for whom the likelihood of release on parole is quite remote." *Id.* at 510, 115 S.Ct. at 1603, 131 L.Ed.2d at 597. Second, the parole board's authority under the statute was carefully tailored in that the board was required to find it was not reasonably expected that the inmate would be granted parole at a hearing in the following years. The *Morales* Court noted that this was " 'no arbitrary decision' " because the board would first have to conduct a complete hearing and, if it chose to defer the next parole review for more than a year, it had to state the bases of that finding. *Id.* at 511, 115 S.Ct. at 1604, 131 L.Ed.2d at 598

(citation omitted). Finally, the Court stated that the board retained the authority "to tailor the frequency of subsequent suitability hearings to the particular circumstances of the individual prisoner." *Id.* In sum, the *Morales* Court concluded that the statute "simply allow[ed] the Board to avoid the futility of going through the motions of reannouncing its denial of parole suitability on a yearly basis" for this subset of inmates. *Id.* at 512, 115 S.Ct. at 1604, 131 L.Ed.2d at 598.

The Fourth Circuit revisited the issue of whether South Carolina's change from annual to biannual parole review constituted an ex post facto violation in *Roller v. Gunn*, 107 F.3d 227 (4th Cir.), *cert. denied*, 522 U.S. 874, 118 S.Ct. 192, 139 L.Ed.2d 130 (1997) (*Roller II* ). In *Roller II*, the Fourth Circuit held that, in light of the *Morales* decision, the application of section 24–21–645 did *not* violate the Ex Post Facto Clause. The *Roller II* court found that the South Carolina statute prescribing biannual parole review for violent offenders "bears a strong resemblance to the California statute sustained in *Morales.*" *Id.* at 235. The Fourth Circuit stated that "[l]ike the California measure, the South Carolina law applies only to prisoners convicted of violent crimes-prisoners which the South Carolina legislature determined were unlikely to receive release on parole." *Id.*

Judge Hall dissented in *Roller II* and disagreed with the majority's conclusion that the South Carolina statute resembles the California statute in *Morales.* Judge Hall noted that while the California statute applies only to those convicted of more than one killing, i.e., "the worst of the worst," the South Carolina statute applies to all violent offenders, some of whom are incarcerated for crimes which carry a one- to ten-year sentence. *Id.* at 238 (citing S.C.Code Ann. § 44–53–370(e)(1)(a) which prescribes a sentence of one to ten years for a first offense of trafficking in 10–100 pounds marijuana). Judge Hall also noted that the California statute had a default review of one year, with a deferral of up to three years available only upon a finding that the inmate will likely not be paroled before then, while the South Carolina statute simply sets parole review for violent offenders automatically at every two years. *Id.* at 239.

We find the analysis of the dissent in *Roller II* more compelling than that of the *Roller II* majority. The South

Carolina statute which calls for biannual parole review hearings for all violent offenders is clearly distinguishable from the very specific statute at issue in *Morales*. Under South Carolina law, there is a variety of crimes defined as violent,[4] and the possible sentences for these crimes range from one year to life imprisonment. In *Morales*, the statute applied to a very well-defined set of inmates—multiple killers—while the South Carolina statute applies equally to a variety of inmates—from murderers to marijuana traffickers—and many of these inmates will likely be paroled at some point. Moreover, the South Carolina statute does not require any specific findings in order to defer parole review for two years; instead, the two-year interval is automatic after an initial denial of parole.[5]

Applying the test for an ex post facto violation, we hold that the change from annual parole eligibility review to biannual review "produces a sufficient risk of increasing the measure of

---

4. Currently, the violent crime statute defines the following crimes as violent: murder; criminal sexual conduct (CSC) in the first and second degree; CSC with minors, first and second degree; assault with intent to commit CSC, first and second degree; assault and battery with intent to kill; kidnapping; voluntary manslaughter; armed robbery; attempted armed robbery; carjacking; drug trafficking; arson in the first degree and second degree; burglary in the first degree and second degree; engaging a child for a sexual performance; homicide by child abuse; aiding and abetting homicide by child abuse; accessory before the fact to commit any of the above offenses; and attempt to commit any of the above offenses. S.C.Code Ann. § 16-1-60 (Supp.1998).

5. Recently, in *Garner v. Jones*, 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000), the United States Supreme Court addressed Georgia's parole review provisions. Under Georgia law, the Parole Board is initially required to consider parole for inmates serving life sentences after they have served seven years. Ga.Code. Ann. § 42-9-45(B) (1982). The Parole Board's Rules required that reconsideration of the denial of parole take place every three years. In 1985, the Board amended its rules to provide that "reconsideration of those inmates serving life sentences who have been denied parole shall take place *at least* every eight years." Ga. Rules & Regs., Rule 475-3-.05(2) (1985) (emphasis supplied). In 1995, Jones, who was serving two life sentences for two murders, was denied parole. The Parole Board set his next consideration for 2003. Although the board could have shortened the interval, it set the 8-year period based on Jones' multiple offenses and the "circumstances and nature" of his second offense. The Eleventh Circuit Court of Appeals found the change in review from 3 years to 8 years to constitute an ex post facto violation. *Jones v. Garner*, 164

punishment attached to the covered crimes," and therefore, any retroactive application of section 24–21–645 constitutes an ex post facto violation. *Morales*, 514 U.S. at 509, 115 S.Ct. at 1603, 131 L.Ed.2d at 597; *see also Lynce*, 519 U.S. at 444–45, 117 S.Ct. at 897, 137 L.Ed.2d at 73 (if a statute effectively increases the "quantum of punishment," then retroactive application is unconstitutional).

Accordingly, this Court's holding in *Griffin v. State, supra,* that retroactive application of the statute increasing parole review to every two years constitutes an ex post facto violation, remains the law in South Carolina.

## CONCLUSION

We hold that the retroactive application of section 24–21–645 violates petitioner's ex post facto rights. Pursuant to *Al–*

F.3d 589 (11th Cir.1999). The U.S. Supreme Court reversed. *Garner v. Jones,* 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000).

In *Garner,* the Court found the amended rule did not create a significant risk of prolonging respondent's incarceration because a) the rule vests the Board with discretion as to how often to set an inmate's date for reconsideration, with 8 years being the maximum, and b) the Board's policies permit "expedited parole reviews in the event of a change in their circumstance or where the Board receives new information that would warrant a sooner review." Given these factors, the *Garner* Court found the Board could set reconsideration dates according to the likelihood a review would result in meaningful considerations as to an inmate's suitability for release. Moreover, inmates whom the Board did not feel would likely be suitable for release could nonetheless seek an earlier review upon a showing of either "a change in [his] circumstances[s]" or the Board's receipt of "new information."

Unlike the Georgia Parole Board's Rules, South Carolina's statute *automatically* increases violent offenders parole consideration from one year to "every two years." S.C.Code Ann. § 24–21–645. There is nothing in the statute providing for an earlier discretionary review if an inmate appears suitable for review, nor is there any provision permitting an earlier review upon a showing of changed circumstances. Unlike *Garner,* we find South Carolina's system does indeed create "a significant risk of prolonging respondent's incarceration," by one year without *any* chance for review in the interim. Accordingly, the Supreme Court's opinion in *Garner* is inapposite.

In any event, more expansive rights may be afforded under state constitutional provisions than those conferred by the federal constitution. *See State v. Easler,* 327 S.C. 121, 489 S.E.2d 617 (1997). Accordingly, we find the change in parole consideration under § 24–21–645 offends S.C. Const. art. I, § 4, even if the federal constitution is not offended.

*Shabazz v. State, supra,* we vacate the PCR court's decision and remand to the circuit court to determine which agency— either the DOC or the DPPPS—this matter should be remanded to for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

TOAL, Acting C.J., MOORE and BURNETT, JJ., concur.

FINNEY, C.J., not participating.