576 S.E.2d 146

**James FURTICK, Respondent,**

v.

**SOUTH CAROLINA DEPARTMENT OF PROBATION, PAROLE AND PARDON SERVICES, Appellant.**

**No. 25581.**

Supreme Court of South Carolina.

Submitted Oct. 23, 2002.

Decided Jan. 13, 2003.

Rehearing Denied Feb. 20, 2003.

Teresa A. Knox, Tommy Evans, Jr., and J. Benjamin Aplin, of South Carolina Department of Probation, Parole, and Pardon Services, all of Columbia, for appellant.

James Furtick, of Bennettsville, pro se.

Chief Justice TOAL:

The South Carolina Department of Probation, Parole, and Pardon Services ("DPPPS") argues that the circuit court erred in holding that the Administrative Law Judge Division ("ALJD") has jurisdiction to review the final decision of the DPPPS in this case.

### FACTUAL/PROCEDURAL BACKGROUND

Respondent, James Furtick, was indicted for burglary in the second degree and grand larceny on June 30, 1994 for crimes committed in September 1992. Respondent was convicted as charged and sentenced to fifteen years for burglary in the second degree and three years for grand larceny, to run consecutively. The Court of Appeals affirmed Respondent's conviction and sentence. *State v. Furtick*, 95–UP–338 (Ct. App. filed December 28, 1995).

Initially, the South Carolina Department of Corrections ("SCDC") projected that Respondent would be eligible for parole. Based on this projection, the DPPPS notified Respondent that a parole hearing had been scheduled. Before the scheduled hearing, however, the DPPPS notified Respondent that he was not eligible for parole on his burglary conviction because he was classified as a subsequent violent offender under S.C.Code Ann. § 24–21–640 (Supp.1992). Section 24–21–640 provides, in relevant part,

> The board must not grant parole ... to any prisoner serving a sentence for a second or subsequent conviction, following a separate sentencing for a prior conviction, for violent crimes as defined in Section 16–1–60.

Section 24–21–640 was in effect both in 1992, when Respondent committed the crimes, and in 1994, when Respondent was tried and convicted. Section 16–1–60 was enacted under the 1986 Omnibus Criminal Justice Improvements Act,[1] and defines burglary in the second degree as a violent crime.[2]

The DPPPS classified Respondent as a violent offender based on a prior conviction for voluntary manslaughter.[3] Respondent objected to the DPPPS's classification of him as a "violent offender," and ultimately appealed from the DPPPS's decision to the ALJD. The ALJD dismissed Respondent's appeal on grounds that the ALJD lacked jurisdiction to review an appeal from a final decision of the DPPPS. Respondent appealed, and the circuit court reversed and remanded, find-

---

1. 1986 Act No. 462 § 33.

2. In addition to burglary in the second degree, section 16–1–60 defines the following offenses as violent crimes: murder, criminal sexual conduct in the first and second degree, assault and battery with intent to kill, kidnapping, *voluntary manslaughter*, armed robbery, drug trafficking, arson in the first degree, and burglary in the first degree. S.C.Code Ann. § 16–1–60 (Supp.1991) (emphasis added).

3. Respondent pled guilty to voluntary manslaughter in 1968, and was sentenced to 30 years. Respondent escaped from prison in 1971, was captured, and sentenced to 2 additional years for escape. In addition, Respondent was charged with housebreaking and grand larceny (committed before he was recaptured), and was sentenced to 15 additional years. In 1978, Respondent was released on parole for the remainder of the 47 years of his sentence.

ing that the ALJD does have jurisdiction to review the final decision of the DPPPS in this case.

DPPPS raises the following issue on appeal:

Did the circuit court err in finding that the ALJD has jurisdiction to review the DPPPS's final decision that Respondent is not eligible for parole by operation of S.C.Code Ann. § 24–21–640?

## LAW/ANALYSIS

■ Respondent argues that the ALJD has jurisdiction to hear his appeal from the decision made by the DPPPS that he is not parole eligible by operation of section 24–21–640. We agree.

Essentially, Respondent argues that section 16–1–60 operates as an *ex post facto* law in conjunction with section 24–21–640 because it enhances his sentence, making him ineligible for parole. This Court has defined *ex post facto* claims as non-collateral matters. *Jernigan v. State*, 340 S.C. 256, 531 S.E.2d 507 (2000). In *Al–Shabazz v. State*, this Court held,

[a]n inmate may ... seek review of [the SCDC's] final decision in an administrative manner under the [Administrative Procedures Act ("APA")]. Placing review of these cases within the ambit of the APA will ensure that an inmate receives due process, which consists of notice, a hearing, and judicial review.

338 S.C. 354, 369, 527 S.E.2d 742, 750 (1999). This Court recognized that not all of the SCDC's decisions were subject to review by the ALJD, and specifically declined to apply certain provisions of the APA to decisions made as part of the SCDC's internal disciplinary process. *Id.* The Court distinguished internal disciplinary decisions from the denial of sentence-related credits at issue in *Al–Shabazz*, however, on grounds that denial of good time credits affected a constitutionally protected liberty interest. *Id.* at 369–70, 527 S.E.2d at 750 (citing *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

In *Wolff v. McDonnell*, the United States Supreme Court found that Nebraska had created a *statutory* right to good time credits, which provided that good time credits were to be

forfeited only for serious misbehavior. 418 U.S. at 557, 94 S.Ct. at 2975, 41 L.Ed.2d at 951 (citing Neb.Rev.Stat. § 83–1 (Supp.1972)). Based on Nebraska's statute, the United States Supreme Court found,

> the prisoner's interest [in good time credits] has real substance and is sufficiently embraced within the Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process clause to ensure that the state-created right is not arbitrarily abrogated.

418 U.S. at 557, 94 S.Ct. at 2975, 41 L.Ed.2d at 951.

Like the inmate in *Wolff*, the inmate in *Al–Shabazz* protested the SCDC's reduction of good time credits he had accrued as a method of punishment. In *Al–Shabazz*, this Court found the inmate had a "protected liberty interest due to the potential loss of sentence-related credits" and, therefore, that he was entitled to review by the ALJD, and in turn, to review by the judicial branch. 338 S.C. at 382, 527 S.E.2d at 757.

In *Al–Shabazz*, the Court recognized that "[t]hese administrative matters typically arise in two ways: (1) when an inmate is disciplined and punishment is imposed and (2) when an inmate believes prison officials have erroneously calculated his sentence, sentence-related credits, or custody status." 338 S.C. at 369, 527 S.E.2d at 750. Respondent's case arises in the latter manner. He alleges that the DPPPS erroneously determined that he is not eligible for parole.

Under *Wolff*, to determine whether Respondent is entitled to review of the DPPPS's decision, the Court must decide whether Respondent has a liberty interest in gaining access to the parole board. In our opinion, the *permanent* denial of parole *eligibility* implicates a liberty interest sufficient to require at least minimal due process. Section 24–21–620 provides for review by the Board, "regardless of whether or not any application has been made therefore, for the purposes of determining whether or not such prisoner is entitled to any of the benefits provided for in this chapter." S.C.Code Ann. § 24–21–620 (Supp. 1992).[4]

---

4. Although this provision creates a liberty interest in parole eligibility, it does not create a liberty interest in parole. Section 24–21–620 also provides the procedure to follow when the Board determines not to

Following DPPPS's determination that Respondent was ineligible for parole as a violent offender under section 24–21–640, Respondent then had the same right to review as the inmate in *Al–Shabazz*. In *Al–Shabazz*, the Court outlined the nature of the review available to inmates raising non-collateral issues that implicate liberty interests; those procedures apply equally to inmates affected by final decisions of the DPPPS that affect liberty interests, such as the decision in this case.

█ Although we believe Respondent was entitled to review of his claim by the ALJD, we will address the merits of his claim now for the sake of judicial economy. The issue Respondent raises is well-settled on the merits. As discussed, Respondent argues that he has been subjected to an *ex post facto* law because retroactively designating his 1968 manslaughter conviction a violent crime has enhanced his punishment for that crime. We disagree.

In *Phillips v. State*, under very similar factual circumstances, this Court held "[i]t is not a violation of the *ex post facto* clause for the legislature to enhance punishment for a later offense based on a prior conviction, even though the enhancement provision was not in effect at the time of the prior offense." 331 S.C. 482, 484, 504 S.E.2d 111, 112 (1998) (citing *State v. Dabney*, 301 S.C. 271, 391 S.E.2d 563 (1990)). In *Phillips*, the inmate's 1982 armed robbery conviction was used to deny him parole eligibility on his sentence for a 1987 burglary conviction even though armed robbery was not a violent crime until section 16–1–60 was enacted in 1986.[5]

Similarly, the DPPPS claims Respondent's 1968 voluntary manslaughter conviction can be used to deny him parole

---

grant parole for a *potentially eligible* inmate: "[u]pon a negative determination, the prisoner's case shall be reviewed every twelve months thereafter for the purpose of such determination."

**5.** In *Phillips*, the inmate raised his *ex post facto* challenge by bringing an action for post-conviction relief ("PCR"). After *Al–Shabazz*, this avenue is no longer available. The Court held that PCR "is a proper avenue for relief *only when the applicant mounts a collateral attack challenging the validity of his conviction or sentence* as authorized by section 17–27–20(a)." *Al–Shabazz*, 338 S.C. at 367, 527 S.E.2d at 749. For this reason, it is especially important that Respondent receive some form of administrative review of the DPPPS's *permanent* denial of parole *eligibility*.

eligibility on the sentence he is currently serving for burglary in the second degree, as both were violent crimes under section 16–1–60 when Respondent committed the burglary in 1992. This Court has determined that the time that the crime was committed is the relevant time for purposes of characterizing the crime as violent or non-violent, not the time that the inmate was convicted. *See Sullivan v. State,* 331 S.C. 479, 504 S.E.2d 110 (1998); *Phillips,* 331 S.C. at 484, 504 S.E.2d at 112, footnote 2 (noting that section 16–1–60 was amended between 1993 and 1995 to provide prospective effect only, but declining to express an opinion on the impact of this language on persons *committing offenses during that period*).

Accordingly, Respondent is not eligible for parole under S.C.Code Ann. § 24–21–640 (Supp.1992).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the circuit court holding that the ALJD does have jurisdiction over non-collateral challenges to final decisions of the DPPPS under the procedure outlined in *Al–Shabazz.* On the merits, we find that Respondent as a violent offender is not eligible for parole.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.