606 S.E.2d 499

**Ernest STEELE, Appellant,**

v.

**Stephen BENJAMIN, Director of Department of Probation, Parole and Pardon Services, Respondent.**

**No. 3892.**

Court of Appeals of South Carolina.

Submitted Sept. 15, 2004.
Decided Nov. 22, 2004.

Ernest Steele, of Bennettsville, pro se, for Appellant.

John Benjamin Aplin, and Tommy Evans, Jr., South Carolina Department of Probation, Parole, and Pardon, of Columbia, for Respondent.

BEATTY, J.:

Ernest Steele appeals the circuit court's denial of his petition for a writ of mandamus against Stephen Benjamin, Director of the South Carolina Department of Probation, Parole, and Pardon Services (the Department).  We affirm.[1]

_____

1.  We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTS

Steele was convicted of murder in 1967 and sentenced to life imprisonment. At the time of his conviction, the law provided that a person was entitled to review for parole after serving one-third of his sentence. *See* 1962 Code § 55–611 (Supp. 1966) (noting that the Parole Board may parole a prisoner serving a thirty year to life sentence if he has served at least ten years); 1962 Code § 55–611.1 (1962) (providing that a prisoner is entitled to review for parole after he has served one-third of his sentence). The law did not specify how often an inmate who was denied parole would receive review thereafter.

Steele was paroled in 1978. Steele's parole was revoked in May 1987 for convictions in Tennessee for Possession with Intent to Resell drugs and driving under the influence.[2] Steele was again granted parole one year later in July 1988. Steele violated his parole and it was revoked on February 9, 1994, due to another conviction for Possession with Intent to Resell Heroin. Steele was denied parole when he next appeared before the Parole Board on May 24, 2000. He was informed that his next review by the Parole Board would be two years later, on August 12, 2002.

Steele filed an action in circuit court for a writ of mandamus on December 4, 2000. Steele alleged that he was eligible for annual parole review when he first became eligible for parole and that application of the statutorily required two-year review enacted in 1986 constituted an impermissible ex post facto application of law. He requested the circuit court mandate the Department to apply the annual review in place at the time of his first parole. The Department moved to dismiss the action, or, alternatively, for summary judgment. The Department argued: (1) Steele had not met the requirements to acquire a writ of mandamus; (2) he was only entitled to parole review every two years; and (3) no ex post facto violation had occurred.

---

**2.** In its brief, the Department alleges that Steele's parole was revoked in 1985. However, a verification of Steele's case history is included in the record. In that document, the Department of Corrections verified that Steele re-entered the Department of Corrections in 1987.

A hearing was held in the matter on February 27, 2003. After Steele submitted *Erwin v. State,* Op. No. 93–MO–286 (S.C.S.Ct. filed Aug. 20, 1993),[3] the circuit court requested the Department to consider whether granting Steele annual parole review would be a viable option. In a letter, the Department noted that *Erwin* was a memorandum opinion. The Department informed the circuit court that: (1) *Erwin* had no precedential value; (2) because no law existed at the time of Steele's conviction regarding the timing of parole review after a denial of parole, the Department's internal policy of review every two years controlled; (3) Steele failed to exhaust his administrative remedies when he failed to seek review of the Parole Board's decision through the Administrative Law Judge Division (ALJD); and (4) if the Department allowed Steele annual review, it would also have to allow annual review to the 3,000 other inmates similarly situated, which would strain an "already diminishing budget." In support of its position, the Department attached to its letter an undated, untitled copy of a document, stating the document was a copy of the Department's parole investigation policies at the time of Steele's conviction. The document stated that inmates serving a thirty-year sentence or greater who were denied parole would have a subsequent review for parole after twenty-four months.

After a subsequent hearing in the matter was held on June 2, 2003, the circuit court issued an order denying Steele's request for mandamus.[4] The court found that in allowing Steele parole review every two years instead of every year, the Department was applying the "law/rule/regulation in effect at the time Mr. Steele was sentenced." Thus, the court found no violation of the ex post facto clause. The court did not

---

**3.** In *Erwin v. State,* Op. No. 93–MO–286 (S.C.S.Ct. filed Aug. 20, 1993), the appellant pled guilty in 1960, and the Department attempted to apply to him the biannual parole review from S.C.Code Ann. § 24–21–645 (Supp.1989). The court held the PCR court erred in finding that Erwin was not suffering an ex post facto violation from the application of the biannual review law enacted decades after his guilty plea. *Erwin,* at 2.

**4.** The record does not contain a transcript of either the February 27, 2003 or the June 2, 2003 hearings.

address whether Steele should have exhausted administrative remedies. Steele appeals.

## STANDARD OF REVIEW

"Whether to issue a writ of mandamus lies within the sound discretion of the trial court, and an appellate court will not overturn that decision unless the trial court abuses its discretion." *Charleston County Sch. Dist. v. Charleston County Election Comm'n*, 336 S.C. 174, 179, 519 S.E.2d 567, 570 (1999). "An abuse of discretion arises where the trial judge was controlled by an error of law or where his order is based on factual conclusions that are without evidentiary support." *Tri–County Ice & Fuel Co. v. Palmetto Ice Co.*, 303 S.C. 237, 242, 399 S.E.2d 779, 782 (1990). An appellate court will not disturb the factual findings of the trial court on a mandamus petition if the trial court's findings are supported by any reasonable evidence. *Charleston County Sch. Dist.* at 179–180, 519 S.E.2d at 570.

## LAW/ANALYSIS

The Department points out that Steele failed to exhaust his administrative remedies, and thus, Steele did not meet all the requirements for a writ of mandamus.[5] Steele, however, argues the circuit court had jurisdiction over the mandamus proceedings. Thus, as an initial matter, we address whether the ALJD had jurisdiction to hear Steele's claim that the Department violated the ex post facto clause when it denied him annual review of parole eligibility.

The question of whether an inmate may seek review of the Department's and the Department of Correction's final decisions under the South Carolina Administrative Procedures Act (APA) was answered by our supreme court in *Al–Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000). The court held:

[A]n inmate may seek review of Department's final decision in an administrative matter under the APA. Placing review

---

5. Although the circuit court did not address whether Steele failed to exhaust his administrative remedies, the Department, as the respondent in this matter, points to other sustaining grounds found in the record. *I'on, L.L.C. v. Town of Mount Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000).

of these cases within the ambit of the APA will ensure that an inmate receives due process, which consists of notice, a hearing, and judicial review. It also will provide an orderly and consistent framework for resolving such matters.

*Al–Shabazz,* 338 S.C. at 369, 527 S.E.2d at 750. The court emphasized that not all APA provisions apply to the internal prison disciplinary or decision-making process: " 'The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.' " *Id.* (quoting *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The court also said that review of non-collateral or administrative matters, although limited in scope, must be provided in some form, and the APA is the most obvious and practical solution. *Id.* at 373, 527 S.E.2d at 752.

Ex post facto claims are non-collateral matters. *Jernigan v. State,* 340 S.C. 256, 260, 531 S.E.2d 507, 509 (2000). In *Jernigan,* the appellant, like Steele, argued that the change from annual parole eligibility review to biannual review violated the ex post facto clause of the federal and state constitutions. Jernigan brought his claim in a PCR application in the circuit court. Our supreme court held that Jernigan's ex post facto claim was non-collateral and had not received an APA review. The court held: "Accordingly, as a non-collateral matter, petitioner's claim should be remanded to the appropriate agency to allow it to make a final decision on petitioner's claim." *Id.*

In *Sullivan v. South Carolina Department of Corrections,* 355 S.C. 437, 586 S.E.2d 124 (2003), our supreme court held that the only way that an ALJD can obtain subject matter jurisdiction is that the claim must implicate a state created "liberty interest sufficient to trigger procedural due process guarantees." *Sullivan,* 355 S.C. at 443, 586 S.E.2d at 127 (citing *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Furtick v. S.C. Dep't of Probation, Parole, & Pardon Servs.,* 352 S.C. 594, 598, 576 S.E.2d 146, 149 (2003); and *Al–Shabazz,* 338 S.C. at 382, 527 S.E.2d at 757). *Sullivan* seems to imply that a quantitative analysis of the liberty interest must be conducted.

The requirement of a liberty interest as pronounced in *Sullivan* is not new. It was recognized in *Al–Shabazz*, postulated in *Jernigan* (citing *Al–Shabazz*), and directly addressed in *Furtick*. However, the quantification of the liberty interest was central in *Sullivan*, yet, like some constitutional issues, it remained nebulous. *Sullivan* cited *Furtick* as an example of a sufficient liberty interest required to seek due process in the ALJD. *Furtick* found "the *permanent* denial of parole *eligibility* implicates a liberty interest sufficient to require at least minimal due process." *Furtick*, 352 S.C. at 598, 576 S.E.2d at 149.

The use of the word *permanent* in *Sullivan* and *Furtick* does not mean that there must be a permanent denial of parole eligibility before a sufficient liberty interest is involved. It is merely one of the ways that a sufficient liberty interest may be involved. We must be mindful of the facts in *Furtick*. Furtick actually had been permanently denied parole eligibility. *Sullivan* recognizes that *Furtick* established that an inmate has a right to a ALJD review of an agency's final decision denying parole eligibility, but an inmate does not have a right to a review of a denial of parole. The distinction is that the review or consideration for parole is a right granted by statute whereas parole is only a privilege.

In the present case, Steele is not appealing the denial of parole; he is appealing the Parole Board's change in the time frame in which it will review parole. The question then becomes whether Steele's claim raises a sufficient liberty interest to trigger due process requirements. *Jernigan* is factually similar to the present case. Jernigan, like Steele, alleged that the change from annual parole eligibility review to biannual review violated the ex post facto clause. The *Jernigan* court held that the change from annual parole eligibility review to biannual review produces a sufficient risk of prolonging incarceration by one year and increasing the measure of punishment attached to the covered crimes. It is axiomatic that any period of incarceration implicates a sufficient liberty interest to trigger due process requirements.

Accordingly, Steele's claim was appropriate for disposition under the APA and should have been reviewed by the ALJD. Because he failed to exhaust his administrative remedies,

Steele's petition for a writ of mandamus was appropriately denied.

## CONCLUSION

Steele's complaint that the Department's application of biannual parole review to him constituted an ex post facto violation, potentially lengthening the period of his incarceration by one year, implicated a liberty interest. Thus, Steele should have exhausted his administrative remedies by bringing this action pursuant to the APA. Because he failed to pursue this matter through administrative means, his petition for a writ of mandamus was appropriately dismissed.

Accordingly, the circuit court's dismissal of this action is

**AFFIRMED.**[6]

STILWELL, and SHORT, JJ., concur.

---

**6.** Because we decide this issue on the additional sustaining ground that Steele failed to exhaust his administrative remedies, we decline to address Steele's ex post facto claim. *See I'on, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) ("The appellate court may review respondent's additional reasons and, if convinced it is proper and fair to do so, rely on them or any other reason appearing in the record to affirm the lower court's judgment."); Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, or judgment upon any ground(s) appearing in the Record on Appeal.").