633 S.E.2d 910

**Ronald De'Ray SKIPPER, Respondent,**

v.

**SOUTH CAROLINA DEPARTMENT
OF CORRECTIONS, Appellant.**

**No. 4141.**

Court of Appeals of South Carolina.

Submitted June 1, 2006.

Decided July 31, 2006.

268

Christopher L. Murphy and James A. Stuckey, Jr., both of Charleston, for Appellant.

Ronald De'Ray Skipper, of Bishopville, pro se.

BEATTY, J.

The South Carolina Department of Corrections (SCDC) appeals the circuit court's order finding Ronald De'Ray Skipper was denied both a liberty interest in prison employment and due process with regard to SCDC's drug-testing policy. SCDC contends there is no liberty interest in prison employment and that Skipper was afforded due process prior to his disciplinary conviction for drug possession. We reverse.[1]

## FACTS

Skipper, an inmate at Evans Correctional Institution,[2] was employed at the facility through SCDC and the privately run Prison Industries Enterprises. Prison Industries is a voluntary program which serves the SCDC by employing and training inmates. Inmates choosing to participate in the program receive the prevailing wage of the local area for the particular job they perform with deductions taken for taxes, victim compensation, and room and board.

On January 18, 2001, Skipper was randomly selected for testing under the SCDC drug-testing policy, and he tested positive for marijuana. On January 31, 2001, Skipper was re-tested and his urine was again positive for marijuana. Immediately following this test, a follow-up test was performed and it confirmed the positive result.

On February 7, 2001, a disciplinary hearing was held before prison officials, and Skipper was found guilty of possession of marijuana. This disciplinary conviction resulted in Skipper losing fifteen days of canteen privileges. Additionally, as per Prison Industries' policy, Skipper was terminated from his job because of this disciplinary conviction. On September 21, 2001, Skipper was transferred from Evans Correctional Institution to Lee Correctional Institution, a facility which does not utilize the Prison Industries program.

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

2. Skipper is serving a sentence of twenty years to life for murder and several counts of assault of a high and aggravated nature.

Skipper appealed his disciplinary conviction through a two-step inmate grievance procedure. His appeal was reviewed and denied by the institutional grievance coordinator and the warden. After exhausting his inmate grievance appeals, Skipper appealed to the Administrative Law Judge Division (ALJD). The ALJ dismissed Skipper's appeal for lack of subject matter jurisdiction on the ground the SCDC "did not infringe a liberty interest when it punished Skipper with canteen restrictions for violating a prison disciplinary rule."

Skipper then appealed to the circuit court, and the court remanded the matter back to the ALJD to consider whether the possible effect of the challenged disciplinary conviction on Skipper's parole chances implicated a protected liberty interest. The ALJ again dismissed the appeal for lack of subject matter jurisdiction stating "the mere possibility of an effect on parole eligibility is too tenuous to constitute a deprivation of a liberty interest." The ALJ further found "no liberty interest is implicated when an inmate is faced with lesser penalties such as the loss of television, canteen, or telephone privileges."

Skipper again appealed to the circuit court, and the court ruled in his favor. The court found as a matter of law that Skipper's loss of employment implicated a liberty interest, and SCDC's refusal to send Skipper's urine for further testing interfered with his right to due process. SCDC appeals.

## DISCUSSION

### I. Mootness

In its brief, SCDC asserts the circuit court erred in finding: (1) SCDC's refusal to provide Skipper with Gas Chromatography/Mass Spectrometry (GC/MS) confirmation of his drug test result interfered with Skipper's right to due process in his disciplinary conviction; and (2) Skipper had a liberty interest in prison employment which potentially afforded a basis for a claim under 42 U.S.C. § 1983.

Although we will address these arguments, we find it necessary as a threshold matter to analyze whether the issue regarding Skipper's prison employment is moot.

In its May 23, 2003 order, the circuit court, in finding violations of a liberty interest and due process rights, stated

only that Skipper was entitled to "some relief." SCDC filed a motion to alter or amend the judgment and included a request that, in the alternative, the circuit court clarify what relief should be awarded to Skipper. In response, the circuit court issued a Form 4 order denying the motion. The court failed to address the issue of specific relief.

During the course of his appeal, Skipper was transferred to the Lee Correctional Institution, a facility which does not provide the privilege of employment with Prison Industries Enterprises. Given the authority to determine an inmate's location rests with SCDC, this court may not order his return to Evans Correctional Facility or to another correctional facility which offers Skipper's desired employment. Consequently, as will be discussed, we find any issue regarding potential employment relief for Skipper is moot.

Generally, this court does not have the authority to dictate to the SCDC where an inmate should be housed. In South Carolina, the authority to determine where an inmate is housed is vested in the Department of Corrections. *See* S.C.Code Ann. § 24–3–30(A) (Supp.2005) ("Notwithstanding any other provision of law, a person convicted of an offense against the State must be in the custody of the Department of Corrections, and the department shall designate the place of confinement where the sentence must be served."); *see also* S.C. Const. art. XII, § 2 ("The General Assembly shall establish institutions for the confinement of all persons convicted of such crimes as may be designated by law, and shall provide for the custody, maintenance, health, welfare, education, and rehabilitation of the inmates.").

Absent an atypical and significant hardship on the inmate, or an arbitrary, capricious, or biased decision by the prison, the court has no authority to interfere with inmate housing decisions. *See Sandin v. Conner,* 515 U.S. 472, 486, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)(holding that thirty days of solitary confinement when compared with inmate's overall prison environment, was not the "type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); *Al–Shabazz v. State,* 338 S.C. 354, 381, 527 S.E.2d 742, 756 (2000) (finding judicial review of inmate disputes is limited to "determine whether 'the challenged conditions or

degree of confinement are within the sentence imposed and are not otherwise violative of the Constitution,' or whether prison officials have acted arbitrarily, capriciously, or from personal bias" (quoting *Brown v. Evatt*, 322 S.C. 189, 194, 470 S.E.2d 848, 851 (1996))); *Crowe v. Leeke*, 273 S.C. 763, 764, 259 S.E.2d 614, 615 (1979) (holding transfer within prison system or downgrading of custody status is not subject to judicial review as long as prison officials do not act arbitrarily, capriciously, or from personal bias or prejudice).

Because Skipper has not specifically challenged his transfer to the Lee Correctional Institution and our authority with respect to internal inmate decisions is limited, we are placed in a position of not being able to grant effectual relief. Given we are unable to grant this relief, we find the issue is moot. *See Collins Music Co. v. IGT*, 365 S.C. 544, 549, 619 S.E.2d 1, 3 (Ct.App.2005)(noting a matter becomes moot when some event occurs making it impossible to grant effectual relief).

## II. Liberty Interest in Prison Employment and Due Process

SCDC argues the circuit court erred in finding that Skipper had a liberty interest in prison employment which potentially afforded him a basis for a claim under 42 U.S.C. § 1983. We agree.

Even though this court is without authority to grant Skipper relief in terms of ordering a transfer to a facility offering the Prison Industries program, we address the merits of this issue in the interest of thoroughness given Skipper's liberty interest argument may be broadly construed as also including a challenge to his transfer to a facility that does not offer the employment program.

■■ "[A]dministrative matters entitled to review by the ALJD 'typically arise in two ways: (1) when an inmate is disciplined and punishment is imposed and (2) when an inmate believes prison officials have erroneously calculated his sentence, sentence-related credits, or custody status.'" *Sullivan v. South Carolina Dep't of Corr.*, 355 S.C. 437, 441, 586 S.E.2d 124, 126 (2003) (quoting *Al–Shabazz v. State*, 338 S.C. 354, 369, 527 S.E.2d 742, 750 (2000)). We also recognize that a condition of confinement could implicate a state-created liberty

interest, thus requiring minimal due process. *See Sullivan,* 355 S.C. at 442, 586 S.E.2d at 126 ("[S]tates may create liberty interests which are protected by the Due Process Clause, but ... 'these interests will be generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995))).

■ "Courts traditionally have adopted a 'hands off' doctrine regarding judicial involvement in prison disciplinary procedures and other internal prison matters, although they must intercede when infringements complained of by an inmate reach constitutional dimensions." *Al–Shabazz,* 338 S.C. at 382, 527 S.E.2d at 757. In other words, an inmate's complaint must encompass an infringement of a liberty interest that imposes an atypical and significant hardship on the inmate to trigger due process guarantees and judicial review.

The Prison Industries program, like a work release program, is statutorily created. *See* S.C.Code Ann. § 24–3–430(A) (Supp.2005) ("The Director of the Department of Corrections may establish a program involving the use of inmate labor ... in private industry for the manufacturing and processing of goods, wares, or merchandise or the provision of services or another business or commercial enterprise considered by the director to enhance the general welfare of South Carolina."); S.C.Code Ann. § 24–3–20 (Supp.2005) (outlining guidelines for inmates recommended for work release). Both have the general purpose of providing inmate employment during incarceration as a means of rehabilitation. Because the work release program is similar to the Prison Industries program, we find instructive precedent analyzing the work release program.

■ Our supreme court has decided that "[t]he Board of Corrections has discretion whether to allow an inmate even to participate in a work release program." *Gunter v. State,* 298 S.C. 113, 116, 378 S.E.2d 443, 444 (1989), *overruled in part on other grounds by Griffin v. State,* 315 S.C. 285, 433 S.E.2d 862 (1993). "Participation in a work-release program is a privilege, not a right. Thus, the denial of participation in a work-release program, standing alone, affords no basis for a claim

under 42 U.S.C. § 1983." *Quillian v. Evatt,* 315 S.C. 489, 491, 445 S.E.2d 639, 640 (Ct.App.1994) (citation omitted).

In an analogous situation, the Fourth Circuit Court of Appeals has stated:

It is well settled that federal courts do not occupy "the role of super wardens of state penal institutions," and "do not sit to supervise state prisons." In particular, the classifications and work assignments of prisoners in such institutions are matters of prison administration, within the discretion of the prison administrators, and do not require factfinding hearings as a prerequisite for the exercise of such discretion. To hold that they are "within reach of the procedural protections of the Due Process Clause would place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges."

*Altizer v. Paderick,* 569 F.2d 812, 812–13 (4th Cir.1978) (citations omitted).

More recently, the United States Supreme Court took the opportunity to clarify the law with respect to state-created liberty interests in prison systems that are protected by the Due Process Clause. *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Court noted that "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. 2293 (citations omitted). In ruling on Conner's case, the Court established directives for future cases. Specifically, the Court held that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id.* at 486, 115 S.Ct. 2293.

▄▄▄▄ Applying the above-outlined principles, we find Skipper's participation in the Prison Industries program is not a right, but a privilege. Not all prisons provide this opportunity to inmates, and those that do provide this option are inundated with inmate requests and forced to maintain long

waiting lists. This employment program does not meet the. test for a state-created liberty interest as outlined in *Sandin* because it does not present an atypical, significant hardship on inmates who are not permitted to participate. Consequently, Skipper, in being terminated from his prison employment, did not suffer an infringement upon his liberty interests.[3] Moreover, it is not a requirement of the due process and equal protection clauses of either the State or the United States Constitutions that if the State undertakes to provide rehabilitative facilities, it must provide such facilities to all prisoners or to none. *See McLamore v. State,* 257 S.C. 413, 424, 186 S.E.2d 250, 256 (1972) (finding that inmate was not denied constitutional rights under the Due Process or Equal Protection clauses of the State and United States Constitutions where certain educational and rehabilitative services available to some inmates at the SCDC were not available to him).[4]

We are cognizant that our holding on this issue may initially appear to be in conflict with our supreme court's decision in *Wicker v. South Carolina Department of Corrections,* 360 S.C. 421, 602 S.E.2d 56 (2004). We believe, however, that the two cases are distinguishable. Like Skipper, Wicker participated in the Prison Industries Program at the Evans Correctional Institute. During the first 320 hours of his employment,

---

**3.** We note that Skipper has not challenged the circuit court's findings that the disciplinary action will not affect his parole eligibility or that the loss of canteen privileges does not infringe on a liberty interest.

**4.** Additionally, we note that Skipper was employed in a state that recognizes the doctrine of employment at-will. *See Prescott v. Farmers Tel. Coop., Inc.,* 335 S.C. 330, 334, 516 S.E.2d 923, 925 (1999) (noting that South Carolina recognizes the doctrine of employment at-will). Because Skipper's employment did not fit within any of the established exceptions to the at-will employment doctrine, his employment was terminable at any time by Prison Industries. Thus, it would be incongruous to find Skipper had a state-created liberty interest in his employment. *See id.* ("At-will employment is generally terminable by either party at any time, for any reason or for no reason at all."); *Nelson v. Charleston County Parks & Recreation Comm'n,* 362 S.C. 1, 6, 605 S.E.2d 744, 746 (Ct.App.2004) (outlining the following established exceptions to the at-will employment doctrine: (1) an employee has recourse against his employer for termination in violation of public policy; (2) an at-will employee may not be terminated for exercising constitutional rights; and (3) an employee has a cause of action against an employer who contractually alters the at-will relationship and terminates the employee in violation of the contract).

Wicker was paid $.25–.75 per hour. After completing his training, Wicker was paid an hourly wage of $5.25 per hour. Due to this wage disparity, Wicker filed an inmate grievance in which he asserted his training wages violated the Prevailing Wage Statute outlined in section 24–3–430(D). This section specifically provides that "[n]o inmate participating in the program may earn less than the prevailing wage for work of similar nature in the private sector." *Id.* at 423, 602 S.E.2d at 57. After the Department of Corrections (DOC) denied Wicker's grievance, Wicker appealed to the ALJ. The ALJ ruled in favor of Wicker, finding there was no statutory authority for the DOC to pay less than the prevailing wage. *Id.* The circuit court affirmed the ALJ. On appeal, the DOC contended Wicker was not entitled to relief under the applicable statute. The supreme court affirmed the decision of the circuit court. In so holding, the court found that "the state's statutory mandate that inmates be paid the prevailing wage" created a liberty interest which may not be denied without due process. *Id.* at 424–25, 602 S.E.2d at 58. Accordingly, the court held Wicker could not be denied this right without being afforded due process of law. *Id.* at 424, 602 S.E.2d at 57.

The instant case is distinguishable from *Wicker* given there is no statutory requirement that all correctional facilities employ the Prison Industries Program or that an inmate participate. In fact, the statute which creates the program specifically provides the establishment of the program is discretionary and that an inmate's participation in the program is voluntary. *See* S.C.Code Ann. § 24–3–430(A) (Supp.2005) ("The Director of the Department of Corrections *may* establish a program involving the use of inmate labor . . . in private industry.")(emphasis added); S.C.Code Ann. § 24–3–430(C) (Supp.2005) ("An inmate *may* participate in the program established pursuant to this section only on a voluntary basis and only after he has been informed of the conditions of his employment.") (emphasis added); *see also Kennedy v. South Carolina Ret. Sys.*, 345 S.C. 339, 352–53, 549 S.E.2d 243, 250 (2001) ("The use of the word 'may' signifies permission and generally means that the action spoken of is optional or discretionary unless it appears to require that it be given any other meaning in the present statute."). Because there is no statutorily-created right for an inmate to participate in the

program or remain in the program indefinitely, we find in Skipper's case, unlike Wicker's, there does not exist a state-created liberty interest.

## III. Drug Test

SCDC further contends the circuit court erred in finding its refusal to provide Skipper with a Gas Chromatography/Mass Spectrometry (GC/MS) test to confirm the result of his failed drug test interfered with Skipper's right to due process. We agree.

In establishing the minimal requirements of due process in a prison disciplinary proceeding involving serious misconduct, our supreme court has relied on precedent from the United States Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539, 563–72, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Al–Shabazz*, our supreme court outlined the requirements as follows:

> (1) that advance written notice of the charge be given to the inmate at least twenty-four hours before the hearing; (2) that factfinders must prepare a written statement of the evidence relied on and reasons for the disciplinary action; (3) that the inmate should be allowed to call witnesses and present documentary evidence, provided there is no undue hazard to institutional safety or correctional goals; (4) that counsel substitute (a fellow inmate or a prison employee) should be allowed to help illiterate inmates or in complex cases an inmate cannot handle alone; and (5) that the persons hearing the matter, who may be prison officials or employees, must be impartial.

*Al–Shabazz*, 338 S.C. at 371, 527 S.E.2d at 751 (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–72, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

 Here, there has been no allegation that these require-ments were not satisfied by the SCDC procedure. The argu-ment posed by Skipper and accepted by the circuit court is that SCDC's failure to send Skipper's urine samples for further testing deprived him of due process. We fail to see how the due process requirements delineated in *Al–Shabazz* could be construed in this fashion, and we find that SCDC

complied with the procedural due process requirements in this matter.

■ Moreover, SCDC developed drug-testing procedures which were followed for Skipper's testing. Contrary to Skipper's assertions, it was not the policy of SCDC to send all "first-time positive" test results for GC/MS testing to confirm the results. Rather, SCDC randomly sent a minimal number of tests to be confirmed by GC/MS testing in order to insure the accuracy of their "test strip" testing. Furthermore, we disagree with the circuit court's finding that to deny Skipper's request "upon Skipper's offer to pay for same [GC/MS testing] interferes with Skipper's right to due process in his disciplinary conviction." Due process in prison drug testing does not require that a prisoner be afforded duplicative testing, nor does it require utilizing a testing method chosen by the prisoner.

## CONCLUSION

Because Skipper has, during the course of his appeal, been transferred to a facility which does not provide his desired employment, we do not believe this court can grant any effectual relief. Nevertheless, in the interest of thoroughness, we address the merits of the appeal. We hold the circuit court erred in finding as a matter of law that Skipper's dismissal from prison employment infringed upon a liberty interest and in finding SCDC's drug testing of Skipper violated his due process rights. Based on the foregoing, we reverse the circuit court's order and find the ALJ should have dismissed Skipper's appeal given his grievance did not implicate a state-created liberty interest.[5]

**REVERSED.**

HUFF and STILWELL, JJ., concur.

---

5. We believe the ALJ improperly dismissed Skipper's appeal on the ground that it lacked subject matter jurisdiction. In light of our decision that Skipper's grievance did not implicate a state-created liberty interest, we find the ALJ had jurisdiction to dismiss the appeal on the merits. *See Slezak v. South Carolina Dep't of Corr.*, 361 S.C. 327, 331, 605 S.E.2d 506, 508 (2004), *cert. denied*, 544 U.S. 1033, 125 S.Ct. 2266, 161 L.Ed.2d 1060 (2005) ("While the ALJD has jurisdiction over

---

all inmate grievance appeals that have been properly filed, we emphasize that the Division is not required to hold a hearing in every matter. Summary dismissal may be appropriate where the inmate's grievance does not implicate a state-created liberty or property interest."). We would, however, note that neither the ALJ nor the circuit court had the benefit of our supreme court's decision in *Slezak*.