**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE
CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Gregory Pencille, #312332, Appellant,

v.

South Carolina Department of Corrections, Respondent.

Appellate Case No. 2019-002115

———————————

Appeal From The Administrative Law Court
Ralph King Anderson, III, Administrative Law Judge

———————————

Unpublished Opinion No. 2023-UP-321
Heard October 5, 2022 – Filed September 27, 2023
Withdrawn, Substituted and Refiled November 1, 2023

———————————

**AFFIRMED AS MODIFIED**

———————————

Clarence Rauch Wise, of Greenwood, for Appellant.

Christina Catoe Bigelow and Kensey Evans, both of
Columbia, for Respondent.

———————————

**PER CURIAM:** Gregory Pencille appeals the Administrative Law Court's
(ALC's) order summarily dismissing his appeal of the South Carolina Department
of Corrections' (SCDC's) determination that he was not entitled to the use of
religious oils. Pencille argues the ALC erred in (1) determining it did not have

jurisdiction to review his appeal, (2) granting SCDC's motion to dismiss without admitting evidence, (3) dismissing his appeal with prejudice, and (4) refusing to hold oral argument.  We affirm as modified.

## FACTS AND PROCEDURAL HISTORY

In November 2018, the senior chaplain at Lee Correctional Institution (Lee Correctional) submitted a written request (the 2018 request) to the warden and associate warden for approval to purchase religious oils for Lee Correctional's Wiccan community's use.  As noted in the 2018 request, a similar purchase request was approved in 2014 (the 2014 request).  The associate warden approved the 2018 request but the warden denied it without explanation.  Thereafter, Pencille, the Wiccan coordinator at Lee Correctional, submitted a written request seeking reconsideration of the denial.  Pencille alleged the warden discriminated against the Wiccan religion by denying the 2018 request while allowing other religious communities at Lee Correctional to use religious oils.  The warden did not respond to Pencille's inmate request.

Pencille subsequently filed a step one grievance, alleging Lee Correctional administrative staff discriminated against the Wiccan community by refusing to respond to his requests for use of religious oils in the Wiccan community's religious services.  He requested approval of the use of religious oils in the Wiccan community's services and that corrective action be taken against the administrative staff.  In support of his request, he cited to SCDC Policy PS-10.05 (2015), the First Amendment of the United States Constitution, the federal Religious Freedom Restoration Act (RFRA),[1] and federal caselaw addressing claims raised under RFRA and the Religious Land Use and Institutionalized Persons Act (RLUIPA)[2] and constitutional challenges to state prison regulations.  The warden denied Pencille's step one grievance, explaining the previous warden denied the 2018 request "due to security reasons."

Pencille filed a step two grievance, arguing the denial of his requests was unconstitutional and against SCDC policy by citing to his step one grievance. SCDC denied Pencille's step two grievance, stating the warden's denial of his 2018 request was pursuant to SCDC Policy PS-10.05, which provided:

> Within the limitations imposed on [SCDC] as a result of

---

[1] 42 U.S.C §§ 2000bb to 2000bb-4.
[2] 42 U.S.C §§ 2000cc to 2000cc-5.

its safety and security needs, [SCDC] will be committed to upholding and facilitating the constitutional rights afforded to inmates to religious freedom. Inmates will be given the opportunity to practice their religious faith to the extent that such practice does not interfere with the security and safety of the institution, staff, or others. [SCDC] will provide necessary programs to facilitate the practice of any recognized religion based on inmate request, need, and available resources.

Pencille appealed SCDC's denial of his step two grievance to the ALC, arguing SCDC violated the Equal Protection Clause of the United States Constitution by denying the Wiccan community access to sacramental oil for security reasons, while allowing other religious groups to use sacramental oil. In support of his argument, Pencille referred to the caselaw cited in his step one grievance. In his supporting memorandum to the ALC, Pencille framed his argument as whether SCDC "violate[d his and the Wiccan community's] religious rights, protection of liberty and property, equal protection, and due process" as "protected by the [United States] constitution, State Constitution, 1st and 14th Amendments, 42 U.S.C.A., and SCDC Policy PS-10.05." Specifically, Pencille asserted evidence showed SCDC burdened the free exercise of his religion by not allowing him access to oils necessary to practice his religion and by transferring him to a correctional institution where the practice of the Wiccan religion was "non-existent" and the chaplain was "prejudiced" against the religion. SCDC filed a motion to dismiss, contending Pencille's allegations did not implicate a state-created liberty interest and therefore, the ALC lacked subject matter jurisdiction to hear his claims. In his response to SCDC's motion to dismiss, Pencille argued constitutional violations caused by state agency actions implicated a state-created liberty interest.

The ALC summarily dismissed Pencille's appeal with prejudice, finding Pencille's "desire to obtain religious oils d[id] not implicate a state-created liberty interest." In support of its decision, the ALC cited to *Slezak v. South Carolina Department of Corrections*,[3] stating our supreme court found in that case "an inmate's interest in 'religious tapes' did not implicate a state-created liberty interest." The ALC further found Pencille's allegations regarding his transfer were not properly before the ALC because federal RLUIPA claims do not implicate a state-created liberty

---

[3] 361 S.C. 327, 605 S.E.2d 506 (2004).

interest.  It noted that under *Skipper v. South Carolina Department of Corrections*,[4] the ALC has limited authority to interfere with inmate housing decisions.

Pencille filed a response to the ALC's order, arguing dismissal with prejudice was procedurally flawed and it was presumed that all issues not addressed in SCDC's motion were granted in his favor.  Pencille stated his response was "not in any way or form to be construed as a motion to reconsider."  The ALC did not respond to Pencille's response.

After filing his notice of appeal with this court, Pencille filed a "motion to stay, issuance of writ of supersedeas, and petition to compel a response" with the ALC. Pencille also requested the ALC, under SCALC Rule 10, require SCDC to respond to his allegations and grievances.  The ALC denied Pencille's motion, finding Pencille's arguments were abandoned.  On the merits, the ALC found SCALC Rule 10 did not apply to Pencille's case because it involved an appeal, not a contested case; summary dismissal was appropriate because the ALC lacked subject matter jurisdiction over Pencille's appeal; Pencille's appeal did not involve any matter that would cause the ALC to exercise its discretion and hold oral arguments; and Pencille failed to establish a writ of supersedeas was necessary to preserve the jurisdiction of the appeal or prevent the issue from becoming moot.  This appeal followed.

**ISSUES ON APPEAL**

1.  Did SCDC violate Pencille's and the Wiccan community's religious, protection of liberty and property, equal protection, and due process rights, which are protected by the First and Fourteenth Amendments of the United States Constitution, federal statute, and SCDC internal policy?

2.  Did the ALC err in granting SCDC's motion to dismiss without admitting evidence?

3.  Did the ALC err in dismissing Pencille's appeal with prejudice?

4.  Did the ALC err in refusing to hold oral arguments to further the record?

**STANDARD OF REVIEW**

---

[4] 370 S.C. 267, 272, 633 S.E.2d 910, 913 (Ct. App. 2006).

Section 1-23-610(B) of the South Carolina Code (Supp. 2022) sets forth the standard of review for this court when sitting in review of a decision by the ALC. *See S.C. Dep't of Corr. v. Mitchell*, 377 S.C. 256, 258, 659 S.E.2d 233, 234 (Ct. App. 2008).

> The court of appeals may . . . reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:
>
> (a) in violation of constitutional or statutory provisions;
>
> (b) in excess of the statutory authority of the agency;
>
> (c) made upon unlawful procedure;
>
> (d) affected by other error of law;
>
> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1-23-610(B). "The review of the administrative law [court]'s order must be confined to the record." *Id*. "In an appeal of the final decision of an administrative agency, the standard of appellate review is whether the AL[C]'s findings are supported by substantial evidence." *Sanders v. S.C. Dep't of Corr.*, 379 S.C. 411, 417, 665 S.E.2d 231, 234 (Ct. App. 2008). "However, when the issue on review raises a question of law, this court 'may reverse the decision of the ALC where it is in violation of a statutory provision or it is affected by an error of law.'" *Torrence v. S.C. Dep't of Corr.*, 433 S.C. 633, 642-43, 861 S.E.2d 36, 41 (Ct. App. 2021) (quoting *Kiawah Dev. Partners, II v. S.C. Dep't of Health & Env't Control*, 411 S.C. 16, 28, 766 S.E.2d 707, 715 (2014)).

**LAW AND ANALYSIS**

Pencille argues the ALC erred in summarily dismissing his claim for lack of subject matter jurisdiction when his claim implicated a state-created liberty interest. We agree in part and disagree in part.

Initially, as to Pencille's arguments under the South Carolina Religious Freedom Act (SCRFA)[5] and section 24-27-500 of the South Carolina Code (2007),[6] we find these claims are unpreserved for appellate review. In his brief of appellant filed with this court, Pencille cites to these state statutes as well as federal RFRA and RLUIPA statutes and caselaw in support of his state-created liberty interest argument; however, his state claims were neither raised to nor ruled upon by the ALC. Although Pencille cited to federal RFRA and RLUIPA statutes and caselaw on his inmate grievance forms and in his filings to the ALC, he failed to cite to SCRFA or section 24-27-500. The ALC did not expressly rule on Pencille's SCRFA claim. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [ALC] to be preserved for appellate review."); *see also I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) ("[T]he losing party generally must both present his issues and arguments to the lower court and obtain a ruling before an appellate

---

[5] S.C. Code Ann. §§ 1-32-10 to -60 (2005). Under SCRFA,

> The State may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless the State demonstrates that application of the burden to the person is:
> (1) in furtherance of a compelling state interest; and
> (2) the least restrictive means of furthering that compelling state interest.

S.C. Code Ann. § 1-32-40.

[6] *See* S.C. Code Ann. § 24-27-500 ("For the purposes of Chapter 32 of Title 1: (A) A state or local correctional facility's regulation must be considered 'in furtherance of a compelling state interest' if the facility demonstrates that the religious activity: (1) sought to be engaged by a prisoner is presumptively dangerous to the health or safety of that prisoner; or (2) poses a direct threat to the health, safety, or security of other prisoners, correctional staff, or the public. (B) A state or local correctional facility regulation may not be considered the 'least restrictive means' of furthering a compelling state interest if a reasonable accommodation can be made to protect the safety or security of prisoners, correctional staff, or the public.").

court will review those issues and arguments.").  The issue, then, has not been preserved for appellate review, and it would be improper for us to address it now.  To the extent Pencille expands upon his SCRFA argument in his reply brief, we find this argument is not properly before this court.  *See Spivey ex rel. Spivey v. Carolina Crawler*, 367 S.C. 154, 161, 624 S.E.2d 435, 438 (Ct. App. 2005) (declining to consider issues raised for the first time in the appellants' reply brief when not raised in their initial brief).  Accordingly, we find Pencille's SCRFA and section 24-27-500 arguments are unpreserved.[7]

"Admittedly, prisoners do not shed all constitutional rights at the prison gate, but '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  *Sandin v. Conner*, 515 U.S. 472, 485 (1995) (citation omitted) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977).  "Courts traditionally have adopted a 'hands off' doctrine regarding judicial involvement in prison disciplinary procedures and other internal prison matters, although they must intercede when infringements complained of by an inmate reach constitutional dimensions."  *Skipper*, 370 S.C. at 274, 633 S.E.2d at 914 (quoting *Al-Shabazz v. State*, 338 S.C. 354, 382, 527 S.E.2d 742, 757 (2000)).  "[A]n inmate's complaint must encompass an infringement of a liberty interest that imposes an atypical and significant hardship on the inmate to trigger due process guarantees and judicial review."  *Id.*

> A claim that implicates a state-created liberty or property interest is not required for the ALC to have subject matter jurisdiction over the appeal.  However, the ALC is not required to hold a hearing in every matter and may summarily dismiss an inmate's grievance if it does not implicate a state-created liberty or property interest sufficient to trigger procedural due process guarantees.

*Allen v. S.C. Dep't of Corr.*, 439 S.C. 164, 171, 886 S.E.2d 671, 674 (2023).

---

[7] In its order summarily dismissing Pencille's claim, the ALC addressed Pencille's allegations regarding his transfer to another correctional institution as raising a RLUIPA claim.  We find Pencille failed to raise this allegation in his step one or step two grievance and therefore any claims relating to his transfer were not properly before the ALC.  *See Gatewood v. S.C. Dep't of Corr.*, 416 S.C. 304, 324, 785 S.E.2d 600, 611 (Ct. App. 2016) ("An issue that is not raised to an administrative agency is not preserved for appellate review by the ALC.").

"Summary dismissal may be appropriate where the inmate's grievance does not implicate a state-created liberty or property interest." *Slezak*, 361 S.C. at 331, 605 S.E.2d at 508.

Administrative matters subject to review by the ALC "typically arise in two ways: (1) when an inmate is disciplined and punishment is imposed and (2) when an inmate believes prison officials have erroneously calculated his sentence, sentence-related credits, or custody status." *Al-Shabazz*, 338 S.C. at 369, 527 S.E.2d at 750. "[S]tates may create liberty interests which are protected by the Due Process Clause, but . . . 'these interests will be generally limited to freedom from restraint which . . . impose[] *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.'" *Sullivan v. S.C. Dep't of Corr.*, 355 S.C. 437, 442, 586 S.E.2d 124, 126 (2003) (third alteration in original) (quoting *Sandin*, 515 U.S. at 484), *abrogated on other grounds by Allen*, 439 S.C. at 169, 886 S.E.2d at 673. In *Prieto v. Clarke*, the United States Court of Appeals for the Fourth Circuit clarified, "*Sandin* holds that, while a state statute or policy may 'create liberty interests' giving rise to Due Process protection, this is so only if the denial of such an interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" 780 F.3d 245, 249 (4th Cir. 2015) (quoting *Sandin*, 515 U.S. at 484); *see also Halcomb v. Ravenal*, 344 F. Supp. 3d 844, 848 (D.S.C. 2018) ("To demonstrate a prisoner has such an interest, and invoke the procedural protections of the Fourteenth Amendment Due Process Clause, the prisoner must show (1) denial of 'an interest that can arise either from the Constitution itself or from state laws or policies,' and that (2) this denial imposed on him an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" (quoting *Lovelace v. Lee*, 472 F.3d 174, 202 (4th Cir. 2006))), *rev'd and remanded sub nom. Halcomb v. Ravenell*, 992 F.3d 316 (4th Cir. 2021); *Skipper*, 370 S.C. at 274, 633 S.E.2d at 914 ("[A]n inmate's complaint must encompass an infringement of a liberty interest that imposes an atypical and significant hardship on the inmate to trigger due process guarantees and judicial review.").

In *Sullivan*, an inmate challenged SCDC's denial of his admission to the Sex Offender Treatment Program. 355 S.C. at 440, 586 S.E.2d at 125. The ALC summarily dismissed the inmate's appeal. *Id.* Our supreme court found the inmate's grievance did not arise in any of the "'typical' ways enumerated in *Al-Shabazz*; it [wa]s not the result of a disciplinary proceeding and d[id] not involve sentence-related credits or custody status. [The inmate]'s claim [wa]s most accurately described as a 'condition of confinement claim.'" *Id.* at 443, 586 S.E.2d at 127. The court affirmed the ALC's dismissal of the inmate's appeal, finding

Article XII, Section 2 of the South Carolina Constitution[8] did not require SCDC to grant the inmate enrollment in the Sex Offender Treatment Program because to do so, would make the ALC and the judicial branch "micromanagers of the prison system." *Id.* at 444, 586 S.E.2d at 127. Further, the court determined denying the inmate access to the program "d[id] not impose an 'atypical or significant hardship' on [the inmate] as all other inmates designated as sex offenders [we]re afforded the same access to treatment." *Id.* at 445, 586 S.E.2d at 128. Nevertheless, our supreme court noted,

> [A] condition of confinement *could* implicate a state[-]created liberty interest . . . . However, we adhere to *Sandin's* pronouncement that "these interests will generally be limited to freedom from restraint which . . . imposes atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Id.* at 445 n.5, 586 S.E.2d at 128 n.5 (fourth alteration in original) (quoting *Sandin*, 515 U.S. at 484).

In *Skipper*, our supreme court held the appealing inmate did not have a liberty interest in prison employment. 370 S.C. at 275-78, 633 S.E.2d at 915-16. The court found the work program at issue was statutorily created; however, participation in the work program was "a privilege, not a right." *Id.* at 275-76, 633 S.E.2d at 915. Further, it determined that "[the] employment program d[id] not meet the test for a state-created liberty interest as outlined in *Sandin* because it d[id] not present an atypical, significant hardship on inmates who [were] not permitted to participate." *Id.* at 276, 633 S.E.2d at 915.

In *Wicker v. South Carolina Department of Corrections*,[9] the appealing inmate participated in the same work program at issue in *Skipper*. However, in *Wicker*, our supreme court determined "the state's statutory mandate that inmates be paid the prevailing wage create[d a liberty] interest, which may not be denied without due process." 360 S.C. at 424, 602 S.E.2d at 58. Our supreme court cautioned that its holding was "extremely limited and is not to be viewed as expanding the

---

[8] "The General Assembly shall establish institutions for the confinement of all persons convicted of such crimes as may be designated by law, and shall provide for the custody, maintenance, health, welfare, education, and rehabilitation of the inmates." S.C. Const. art. XII, § 2.
[9] 360 S.C. 421, 423, 602 S.E.2d 56, 57 (2004).

jurisdiction of the AL[C] in any other circumstance."  *Id.* at 424 n.1, 602 S.E.2d at 58 n.1.

We hold Pencille's claim did not implicate a state-created liberty interest such that it invoked the procedural protections of the Due Process Clause.  Similar to the claim raised in *Sullivan*, Pencille's appeal raised a challenge to a condition of confinement—his ability to practice the Wiccan religion with the use of religious oils.  *See* 355 S.C. at 443, 586 S.E.2d at 127.  As noted by our supreme court in *Sullivan*, state-created liberty interests are not limited to sentence calculation issues and disciplinary decisions; thus, "a condition of confinement *could* implicate a state[-]created liberty interest."  *Id.* at 445 n.5, 586 S.E.2d at 128 n.5.  "However . . . 'these interests will generally be limited to freedom from restraint which . . . imposes atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Id.* (second alteration in original) (quoting *Sandin*, 515 U.S. at 484).  Our supreme court has adopted the standard articulated in *Sandin* to determine whether a claim implicates a state-created liberty interest that affords due process protections.[10]  *See id.* at 442, 586 S.E.2d at 126 ("[S]tates may create liberty interests which are protected by the Due Process Clause, but . . . . 'these interests will be generally limited to freedom from restraint which . . . imposes *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.'" (emphasis in original) (quoting *Sandin*, 515 U.S. at 484)).

Section 24-27-500 and SCDC Policy PS-10.05 create a liberty interest in religious practice.  Section 24-27-500 applies SCRFA to prison regulations and SCDC Policy PS-10.05 provides, "Inmates will be given the opportunity to practice their religious faith to the extent that such practice does not interfere with the security and safety of the institution, staff, or others."  Accordingly, we find inmates have an interest in religious practice arising from state law and policy.

Although we determine the first prong of the *Sandin* analysis is met, we find SCDC's denial of Pencille's request to use religious oils in the practice of his religion for security reasons did not present an atypical or significant hardship in relation to the ordinary incidents of prison life.  *See Sullivan*, 355 S.C. at 442, 586 S.E.2d at 126; *see also Halcomb*, 344 F. Supp. 3d at 848 ("To demonstrate a

---

[10] The ALC relied on our supreme court's holding in *Slezak* to find Pencille's claim did not implicate a state-created liberty interest; however, we find the ALC's reliance on this case was misplaced because the items seized by SCDC in *Slezak* were "educational" cassette tapes, not "religious" cassette tapes.  361 S.C. at 331-32, 605 S.E.2d at 508.

prisoner has such an interest, and invoke the procedural protections of the Fourteenth Amendment Due Process Clause, the prisoner must show (1) denial of 'an interest that can arise either from the Constitution itself or from state laws or policies,' and that (2) this denial imposed on him an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" (alteration in original) (footnote omitted) (quoting *Lovelace*, 472 F.3d at 202)); *see also Prieto*, 780 F.3d at 249 ("*Sandin* holds that, while a state statute or policy may 'create liberty interests' giving rise to Due Process protection, this is so only if the denial of such an interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'").  Under SCDC Policy PS-10.05, SCDC affords inmates "the opportunity to practice their religious faith *to the extent that such practice does not interfere with the security and safety of the institution, staff, or others.*" (emphasis added).  While Pencille may have had an expectation in the practice of his religion, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Sandin*, 515 U.S. at 485 (alteration in original) (quoting *Jones*, 433 U.S. at 125); *see also Sullivan*, 355 S.C. at 445, 586 S.E.2d at 128 (determining that denying the inmate access to the work program "d[id] not impose an 'atypical or significant hardship' on [the inmate] as all other inmates designated as sex offenders [we]re afforded the same access to treatment."); *Skipper*, 370 S.C. at 276, 633 S.E.2d at 915 (determining "[the] employment program d[id] not meet the test for a state-created liberty interest as outlined in *Sandin* because it d[id] not present an atypical, significant hardship on inmates who [were] not permitted to participate.").  SCDC's denial of Pencille's request for the use of religious oils was due to security concerns.  Due to his incarceration, Pencille is not entitled to the use of substances—even those used for religious practice—deemed a security threat.

Based on the foregoing, we find Pencille's claim did not implicate a state-created liberty interest giving rise to procedural protection under the Due Process Clause and we therefore hold the ALC did not err in summarily dismissing Pencille's claim.[11]  *See Allen*, 439 S.C. at 171, 886 S.E.2d at 674 ("[T]he ALC is not required

---

[11] Pencille is correct that federal law protects inmates against government action that imposes a substantial burden on their free exercise of religion unless the government demonstrates a compelling interest and shows it imposed the least restrictive means necessary to further that interest.  *See Nance v. Miser*, 700 F. App'x 629, 630-31 (9th Cir. 2017) (noting this aspect of federal RFRA and RLUIPA).  Even so, we are not aware of any authority granting jurisdiction over

to hold a hearing in every matter and may summarily dismiss an inmate's grievance if it does not implicate a state-created liberty or property interest sufficient to trigger procedural due process guarantees.").

Although we affirm the ALC's holding that Pencille's claim did not implicate a state-created liberty interest, based on our supreme court's recent clarification in *Allen*, we find the ALC erred in determining it did not have subject matter jurisdiction over Pencille's claim. *See Allen*, 439 S.C. at 171, 886 S.E.2d at 674 ("A claim that implicates a state-created liberty or property interest is not required for the ALC to have subject matter jurisdiction over the appeal.").

**CONCLUSION**

Accordingly, the ALC's order is

**AFFIRMED AS MODIFIED.**[12]

**KONDUROS, HEWITT, and VINSON, JJ., concur.**

---

such a claim to the ALC, especially when that court is sitting in an appellate capacity as it was here.

[12] In light of our disposition, we decline to address Pencille's remaining arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues on appeal when its determination of a prior issue is dispositive).